389 F.3d 61
 Raymonde ABRAMS, Nicole B. Silberkleit, Janet Herman, Lily Redner, Bernard Caron, Ernest Haar, Harry Cybulski, Yvonne Litman, Cassandra Kirby Conahay Freund, Jean Jacques Fraenkel, Liliane Lichtenstein, Marie Weinrauch, Plaintiffs-Appellants,
v.
SOCIÉTÉ NATIONALE DES CHEMINS DE FER FRANCAIS, Defendant-Appellee.
 Docket No. 01-9442.
 United States Court of Appeals, Second Circuit.
 Argued: October 3, 2002.
 Decided: June 13, 2003.
 Vacated and Remanded: June 14, 2004.
 Decided: November 9, 2004.
 
 Stephen T. Rodd, Abbey Gardy, LLP, New York, New York (Harriet Tamen, Hurt, Levine & Papadakis, New York, New York; Professor Richard H. Weisberg, Benjamin Cardozo School of Law, New York, New York; Professor Lucille A. Roussin, New York, New York; Clifford James, Fensterstock & Partners, LLP, New York, New York; Professor Malvina Halberstam, Benjamin Cardozo School of Law, New York, New York; Gregory L. Tesoro, New York, New York, of counsel), filed a letter brief for Plaintiffs-Appellants.
 Professor Andreas F. Lowenfeld, New York University School of Law, New York, New York (Professor Linda J. Silberman, New York University School of Law, New York, New York; Steven C. Bennett, Jones Day, New York, New York, of counsel), filed a letter brief for Defendant-Appellee.
 Sharon Swingle, U.S. Department of Justice, Civil Division, Washington, D.C., filed a letter brief for the United States of America as Amicus Curiae.
 Before: CARDAMONE, MINER, and SOTOMAYOR, Circuit Judges.
 PER CURIAM.
 
 
 1
 The named plaintiffs brought suit, individually and on behalf of other Holocaust victims and their heirs and beneficiaries, against the French national railroad company, Société Nationale des Chemins de Fer Francais (SNCF or railroad). Plaintiffs allege that SNCF has committed war crimes and crimes against humanity, under customary international law and the law of nations, by knowingly transporting tens of thousands of French civilians to Nazi death and slave labor camps. During the time when these atrocities were committed, SNCF remained under independent civilian control. It has since been wholly acquired by the French government.
 
 
 2
 Plaintiffs filed their complaint in the United States District Court for the Eastern District of New York before Judge David G. Trager. The district court dismissed plaintiffs' claims, based on its conclusion that it lacked subject matter jurisdiction because SNCF was an "agency or instrumentality of a foreign state" under the Foreign Sovereign Immunities Act of 1976 (FSIA or Act), 28 U.S.C. § 1603(b) (1976). It ruled that none of the Act's exceptions for foreign sovereign immunity applied. Abrams v. Société Nationale des Chemins de Fer Francais, 175 F.Supp.2d 423, 433 (E.D.N.Y.2001). Plaintiffs appealed to this Court, contending that the application of the Act to their claims is impermissibly retroactive. Plaintiffs have maintained that the jurisdictional and immunity questions should be resolved based on the laws in effect at the time of the alleged misconduct and, hence, that SNCF was not entitled to sovereign immunity as it was a private entity separate and distinct from the French government. Plaintiffs also cross-moved for further discovery on the immunity issue.
 
 
 3
 We vacated the district court's order and remanded for further proceedings. Abrams v. Société Nationale des Chemins de Fer Francais, 332 F.3d 173 (2d Cir. 2003). In agreement with the district court's threshold determination, we first held that SNCF is an agency or instrumentality of France under the FSIA. But, we further held that the record was insufficient to determine whether the FSIA applies to pre-enactment conduct. Specifically, we ruled that the issue of subject matter jurisdiction could not be resolved in the absence of information with respect to the State Department's position during World War II on the significance of the corporate form in foreign sovereign immunity determinations. We also believed that information on whether the State Department would have recognized immunity in a case such as the one before us would be a relevant consideration.
 
 
 4
 The United States Supreme Court granted the defendant's petition for a writ of certiorari. Société Nationale des Chemins de Fer Francais v. Abrams, 541 U.S. ___, 124 S.Ct. 2834, 159 L.Ed.2d 264 (2004). The Court vacated our decision and remanded for further consideration in light of Republic of Austria v. Altmann, 541 U.S. ___, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004). Thereafter, at our request, the parties filed supplemental briefs.
 
 DISCUSSION
 
 5
 We have now reconsidered this case in light of Altmann. In Altmann, the Supreme Court held that the FSIA applies to conduct prior to its enactment and prior to the State Department's 1952 adoption of the restrictive theory of sovereign immunity. The Court reasoned that deference to the Act's foreign sovereign immunity determinations was appropriate even where the Act postdates the conduct in question (as it does here), because the purpose of sovereign immunity is not to assist foreign states in "shap[ing] their conduct in reliance on the promise of future immunity," but "to reflect[] current political realities and relationships." Id. at 2252. In so doing, the Court concluded that the retroactivity analysis established in Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and upon which this panel had relied, was inappropriate. Further, the Supreme Court stated that the Act's preamble, as well as its overarching thematic structure, indicated Congress' design for the Act to apply retroactively. Altmann, ___ U.S. at ___-___, 124 S.Ct. at 2253-54.
 
 
 6
 After Altmann, it is no longer necessary to rely upon the State Department's past determinations in ascertaining whether FSIA's application to pre-enactment wrongdoing is impermissibly retroactive. Indeed, in its holding, the Supreme Court expressly disapproved of this historical approach, which a number of Circuits had previously utilized. Id. at 2254. The Court's sanctioning of continued involvement from the State Department refers only to certain situations, which are inapplicable here. Id. at 2255. That is, the views of the State Department are likely only relevant when a court has subject matter jurisdiction and yet there is still strong executive interest in granting immunity or there is an ambiguity regarding an FSIA exception.
 
 
 7
 In their supplemental briefing, appellants argue that a distinction can be drawn between SNCF and the Altmann defendants in that the former, unlike the latter, was a non-governmental entity at the time of the alleged misconduct. This fact is immaterial after Altmann. In determining immunity of a foreign sovereign, Altmann deems irrelevant the way an entity would have been treated at the time of the alleged wrongdoing. Thus, the distinction between a corporate entity and a government entity now only speaks to whether the tortfeasor is a sovereign, or alternatively an "agent" or "instrumentality" of the sovereign, and hence to whether FSIA is applicable at all. While SNCF was predominantly owned by civilians during World War II, it is now wholly-owned by the French government and, as we have previously ruled, is an "agent" or "instrumentality" of France under the FSIA. Abrams, 332 F.3d at 180; see also Dole Food Co. v. Patrickson, 538 U.S. 468, 480, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003) (holding unequivocally that an entity's status as an instrumentality of a foreign state should be "determined at the time of the filing of the complaint"). Once the railroad is encompassed by the FSIA, its prior incarnation as a private entity does not bar the statute's retroactive application.
 
 
 8
 Appellants misapprehend the Altmann holding by stating that it "turns upon the fact that the foreign government enjoyed no settled expectation in avoiding suit." Appellants maintain that Altmann analyzed the relevant historical expectations of the parties and that we should do the same to find that SNCF, as a private entity at the time of the alleged wrongdoing, had no expectation of immunity. The Supreme Court stated, to the contrary, that reliance interests are inapplicable in assessing the retroactivity of sovereign immunity principles because immunity simply "reflects current political realities and relationships." Altmann, ___ U.S. at ___, 124 S.Ct. at 2252.
 
 
 9
 Finally, appellants contend that principles of grace and comity do not apply to SNCF because it was a private entity. Yet, government instrumentalities are entitled to these international norms, and the Dole Food Court's holding eviscerates any possibility that SNCF could escape characterization as such. See 538 U.S. at 480, 123 S.Ct. 1655. In fact, appellant's emphasis upon the narrow "sui generis" context of Altmann overlooks the fact that the FSIA now encompasses separate entities that have since been acquired by government entities. See Altmann, ___ U.S. at ___, 124 S.Ct. at 2252 ("In this sui generis context, we think it more appropriate, absent contraindications, to defer to the most recent such decision — namely, the FSIA — than to presume that decision inapplicable merely because it postdates the conduct in question.").
 
 
 10
 While appellants may be correct in asserting that "applying the FSIA to impair plaintiff's rights against a separate corporation engaged in commercial activity would be impermissibly retroactive," the same cannot be said for the case of a separate corporation that has since been acquired by a sovereign. We are bound by the Supreme Court's decision to defer to comity rather than to approach the situation from the perspective of the injured plaintiffs whose rights have now been altered. Accordingly, the evil actions of the French national railroad's former private masters in knowingly transporting thousands to death camps during World War II are not susceptible to legal redress in federal court today, because defendant has since become a part of the French government and is therefore immunized from suit by the Foreign Sovereign Immunities Act. Nonetheless, the railroad's conduct at the time lives on in infamy.
 
 CONCLUSION
 
 11
 For the reasons explained above, we recall our mandate issued to the district court in Abrams, 332 F.3d 173 (2d Cir. 2003), and thereby affirm the district court's dismissal of plaintiffs' complaint for lack of subject matter jurisdiction.
 
 
 12
 Affirmed.